(Licking Probate Court.)

IN RE APPOINTMENT OF A GUARDIAN FOR JOHN H. EMSWILER, Alleged Imbecile.

---

*Rule as to appointment of guardians—*

(1.) It is not necessary that a person should be an absolute imbecile without mind or capacity, in order to justify the appointment of a guardian under section 6302, Revised Statutes, in which "imbecile" is defined to mean "a person who, not born idiotic, has become so." A person may be an imbecile, though able to govern himself so as not to need a guardian for his person. Therefore, where a person has become so infirm mentally that he cannot manage his affairs with sufficient capacity to preserve his property, a guardian may be appointed.

*Imbecile within the meaning of the statute—*

(2.) One who for some years has been wasting his property, making disadvantageous contracts, spending large sums of money on property in which he had only a life estate, and which was not worth, when the money was invested, one-half the sum expended on it, is an imbecile within the meaning of the statute.

TAYLOR, J.

Adam Emswiler, Wm. Emswiler, and Lydia Prior, all residents of said county of Licking, and all of full age, allege they are the next of kin of John Emswiler; that for the purpose of caring for the estate of said alleged imbecile it is necessary to have a guardian for the said John H. Emswiler; that the said John H. Emswiler is a resident of this county; is a owner of real and personal property; that the said John H. Emswiler is an imbecile and totally incapable of taking care of and preserving his property, and is, in fact, disposing of the same without consideration, and is otherwise improvidently and injudiciously caring for said estate, so that the same will be entirely lost unless the court shall interpose; and they pray for the appointment of a guardian to take care of the estate of the said John H. Emswiler.

To the petition he files his answer (orally), maintaining that he is not an imbecile or that he is incapable of taking care of or preserving his property, or that he is disposing of the same without consideration; that he is in good health physically, of sound mind, and entirely capable of managing his own affairs.

Upon this issue the parties went to trial and testimony disclosed the following facts: John H. Emswiler is in his forty-first year; that his father deeded to him one hundred and seventeen acres of land in Harrison township, for and during his natural life, he to pay the other heirs one thousand dollars; that the other heirs received one hundred acres each in fee simple; that he paid the one thousand dollars and put two thousand dollars in improvements upon this life estate; that his mother took charge of this sum and controlled it for him; that at the suggestion of a renter who lived on this life estate, he issued notes and in this way his mother paid the notes; that his was a scheme suggested to him by this renter on his life estate, which was resorted to to get this money out of his mother's hands; he had an estate in personal property of $6,200, besides this farm of one hundred and seventeen acres; that he worked as a day laborer at times; he worked for his brother-in-law; did a good day's work, that his brother-in-law never permitted him to work by himself; that the one hundred and seventeen acres was unimproved at the time of the death of his father, eleven years ago. His brothers Adam and William testified that he was and had been an imbecile from his birth; J. S. Youmans, A. R. Miller, Jos. Atkinson, A. B., Joseph, and Chas. C. Rusk testified that they had known him all his life; that he was an imbecile and had been all his life: that he was incapable of managing and controlling his property; Christian Philipps, who resided on his farm for a number of years, testified that he was not capable of managing his business affairs; Dr. C. D. Watkins, of Etna, who had been his physician, testified that he was incapable of controlling and

managing his business affairs; that he entered into a contract to pay four hundred dollars in advance for three years' board; this Emswiler admitted on the witness stand; his tenant testified that this was the contract and that he gave his notes for the four hundred dollars to his tenant.

Dr. Charles F. Turney, Dr. John M. Durham and Dr. John M. Lisle, of Columbus, Ohio, testified that he was not an imbecile, but admitted that he was not possessed with as much capacity as ordinary men. Drs. Turney and Dunham never saw John H. Emswiler until they examined him for the purpose of this trial. Dr. Lisle had not seen him for fifteen years.

It was also testified to that he negotiated his notes at a ruinous discount, expecting his mother to pay them. It was also testified that he drew a check for $150.00 on a Pataskala bank where he never had any deposit, and that he made a note with Adam Emswiler's name to it, and sold it to Youmans, about three years ago. His conduct in his horse deals with A. R. Miller and A. Joseph, according to their testimony, has a strong tendency to show imbecility.

This is a short, concise synopsis of the evidence in the case.

Section 6302, Revised Statutes, is the section under which this application is made; the particular portion of said section referred to and urged upon the consideration of the court is as follows: "An imbecile shall in this chapter be understood to mean a person who, not born idiotic, has become so."

The question presented and argued by counsel is, what constitutes an imbecile under this section as above quoted?

Webster says: "An imbecile is one destitute of strength, either of body or mind; weak, feeble, impotent, decrept Syn. Weak, debilitated, feeble, impotent."

The Standard Dictionary says: "Having the mental faculties feeble or undeveloped; half-witted, weak minded. 2. Characterized by feebleness; mentally impotent; an expression of character of opinion that indicates feebleness, especially mental feebleness."

The Universal Dictionary says: "Weak, feeble, destitute of strength, impotent. 2. Mentally weak, or feeble, having the mental faculties weakened or impaired. One who is imbecile or weak mentally or physically. An imbecile often changes his views and vacillates in his purposes. That which, in its highest form is genius, in its lowest is imbecility. The quality, or state of being imbecile; weakness, mental or physical."

Bouvier's Law Dictionary say: "A weakness of the mind caused by the absence or obligation of natural or acquired ideas; or it is described to be an ab-

normal deficiency either in those faculties which acquaint us with the qualities and ordinary relation of things or in those which furnish us with the morals and motives that regulate our relations and conduct towards our fellow men. 2. Imbecility differs from idiocy in this, that the subjects of the former possess some in degree to that possessed by the great mass of mankind, while those of the latter are utterly destitute of reason. Imbecility differs also from stupidity; the former consists in a defect of the mind, which rendered it unable to examine the data presented to it by the senses and therefrom to deduce the correct judgment; that is, a defect of intensity or reflective power. The latter is occasioned by want of intensity or perceptive power. 3. There are various degrees of this disease. It has been attempted to classify the degrees of imbecility, but the careful observer of nature will perhaps be soon satisfied that the shades of difference between one species and another, are almost imperceptible. An imbecile is defined as one destitute of strength, either of body or mind. One who is weak, feeble, impotent, decrepit. Mental imbecility is a weakness of the mind due to the defective development or loss of the faculties. Whether it will incapacitate the subject for the ordinary duties of life depends upon the seriousness of the infirmity in the particular case." 16 American and English Ency. Law, p. 563: Imbecility and weakness of mind may exist in different degrees between the limits of absolute idiocy on the one hand and perfect capacity on the other.

1. (Note to the definition given above), Imbecility is a degree of mental infirmity that destroys or impairs mental capacity. 2. If the testimony shows that the mental infirmity of the defendant is of such a degree as to destroy his capacity for ordinary business and for preserving his property, then a guardian should be appointed for his property. 3. The testimony of the defendant's neighbors who have had an opportunity to judge him by his conduct and acts for years, is the best evidence of such a degree of imbecility as impairs his capacity for ordinary business.

It is the humane policy of the state to take care of and provide for persons who are so unfortunate as to be afflicted with such mental infirmity as renders them unable to take care of and protect themselves in person and property. In pursuance of this humane policy, section 6032, Revised Statutes, providing for the appointment of guardians for idiots, imbeciles and lunatics was enacted. It is not to be presumed, in view of the general policy of the state towards these unfortunates, that a person, though apparently an imbecile to such a degree that he cannot apply the

faculties of his mind to his business, and take care of and preserve his property, must be shown to be a complete idiot, or that he is a gibbering, slobbering, lemon-headed wild man, before a guardian for his property can be appointed. Section 6302, Revised Statutes, authorizes the appointment of a guardian for an imbecile generally. A person may be an imbecile and yet be able to govern himself so as not to need a guardian for the person and yet not be utterly unable to manage his business and property. When, therefore, the legislature said in section 6302, Revised Statutes, that "an imbecile shall in this chapter be understood to mean a person who, not being idiotic, has become so," it evidently did not mean that a person cannot be adjudged an imbecile unless he is a complete idiot, that is a person without mind and capacity. It simply means that a person must have become infirm to the extent that he cannot manage his business and affairs with sufficient capacity to preserve his property.

This construction of the statute is in accordance with the humane policy of the state, which, through the intervention of guardians, seeks to prevent imbeciles possessed of property from becoming paupers and a charge upon the public. It is difficult to draw the boundary line between capacity and imbecility; the latter is defined to be a degree of mental infirmity ranging between the extreme of capacity and idiocy. The best authorities on medical jurisprudence say that the presence of imbecility may be detected by the feebleness of the perception and dullness of sensibility common to all its subjects, and this feebleness of perception and dullness of sensibility is manifested in the acts and conduct of the imbecile.

Measured by this standard, the testimony given by the different witnesses, and the definition of the various authorities cited, does the testimony show that John H. Emswiler is an imbecile and that his mind cannot apply its faculties to the management of his affairs? If so, then this application should be sustained. In re Nancy Tempest 21 W. L. B., 301. It is to be noted that his father mistrusted his mental capacity, when shortly before his death, about eleven years ago, he only deeded him a life estate in one hundred and seventeen acres of good land, while he conveyed to his other children about an equal portion of and in fee simple. John has since drifted from pillar to post, wasting a large portion of the money that he inherited from his father's estate, and even permitted his farm to be sold for taxes, and for the past two years his mother has exercised a sort of guardianship over his share of the proceeds of the sale of the Iowa land, and provided a trustee in her will for the property willed to him by her. Instead of asserting his right to the possessions of said moneys, as a rational man would do he followed the suggestion of a tenant, like a weak-minded imbecile would, to get the money. In the opinion of the court no one but an imbecile would pay a thousand dollars difference between one hundred acres in fee simple and one hundred and seventeen acres for a life estate; and it certainly is strong evidence of imbecility to take two thousand dollars of his own money and improve a life estate to that extent, when a life estate in one hundred and seventeen acres is not worth a thousand dollars, and was not at the time of the death of his father, and is not worth to exceed half that at the present time. To pay a thousand dollars difference and to put two thousand dollars improvement on a life estate, is the very strongest and best kind of evidence to show a total disregard of the value of money and property, and is sufficient to satisfy this court that John H. Emswiler is an imbecile, and should have a guardian.

The court further finds that there is no question of constitutional right in his case and no such question can be raised and argued with reason. It is an attempt to argue an absurdity and a weak effort in straining at a barren ideality for the want of something else to say.

The application for the appointment of a guardian is granted.

David M. Keller, for petitioners.

Jesse W. Snider, for John H. Emswiler.